# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMUEL E. THOMAS, spouse, on behalf of Diane L. Thomas, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-11-5-SPS ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The claimant Samuel E. Thomas, spouse, on behalf of Diane L. Thomas, deceased requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).   The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).*See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).   But the Court must review the record as a whole, and "[t]he

---

[1]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 29, 1960, and was forty-eight years old at the time of the first administrative hearing. She has an eleventh grade education and no past relevant work.  (Tr.20, 31).  The claimant alleges that she has been unable to work since July 20, 2007 because of problems with her feet, knees, and legs.(Tr. 153).

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on July 20, 2007.  The Commissioner denied her application.  ALJ John W. Belcher held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 21, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for two hours in an eight-hour work day, and or sit for eight hours in an eight-hour work day.  (Tr. 19).  The ALJ further concluded that the claimant was capable of occasionally climbing stairs, balancing,

bending, stooping, kneeling, crouching, and crawling but would be unable to climb ladders, ropes and scaffolds.  (Tr. 19).  The ALJ further limited the claimant in the following ways: i) avoiding moderate exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, toxins and gases, fast and dangerous machinery, and driving; ii) avoiding all exposure to unprotected heights; iii) performing simple, repetitive tasks; and iv) having only superficial contact with co-workers, supervisors, and the general public. (Tr. 19).  The ALJ concluded that the claimant was  not disabled because there was work the claimant could perform in the national economy, *i. e.*, sorter, mail clerk, and sewing machine operator. (Tr. 21).

## Review

The claimant's spouse (who is now the plaintiff in this action) contends that the ALJ erred: (i) by failing to properly analyze the opinion of state examining physician Dr. Hickman; and (ii) by finding that the claimant's record of substance abuse was material to his finding that she was not disabled.  The Court finds the first contention dispositive.

The claimant was evaluated by Dr. William L. Cooper, Ph.D. on December 2, 1997 in conjunction with a prior application for social security benefits.  (Tr. 212-14). Dr. Cooper administered the Wechsler Adult Intelligence Scale-Revised Edition (WAIS) and conducted a "brief clinical interview" during this examination.  (Tr. 212).  The claimant stated that she had recently tested "low on an achievement test she took administered by the Department of Human Services" and that she was in special education while in school.  (Tr. 212).  She related that she drinks socially but refrains

from illicit drug use, and that she "is often nervous and has occasional depression." (Tr. 213). The results of the WAIS indicated that claimant was functioning in the low average range of intellectual ability and her verbal IQ was 79, performance IQ was 87, and full scale IQ was 82. (Tr. 213).

On November 14, 2007, Dr. Carolyn Goodrich, Ph.D. completed a Psychiatric Review Technique (PRT) and a corresponding Mental Residual Functional Capacity Assessment. (Tr. 231-47). Dr. Goodrich found that claimant had mental retardation, which was evidenced by "[s]ignficantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" and noted that claimant had borderline intellectual functioning. (Tr. 235). Dr. Goodrich also found that claimant was mildly limited in her activities of daily living and maintaining social functioning and moderately limited in her ability to maintain concentration, persistence, or pace. (Tr. 241). Dr. Goodrich also found that claimant was moderately limited in the following areas on the Mental RFC: i) ability to understand and remember detailed instructions; ii) ability to carry out detailed instructions; and iii) ability to interact appropriately with the general public. (Tr. 245-46). Her written comments reveal that she thought claimant was capable of performing simple and some complex tasks with routine supervision, relating to supervisors and peers on a superficial work basis, and adapting to work situations. (Tr. 247).

Finally, the claimant was evaluated by examining state physician Dr. John W. Hickman, Ph.D. on June 10, 2009. (Tr. 320-29). During the interview, the claimant

stated that "she is depressed and cries uncontrollably most of the time" and that "she often feels overwhelmed by her circumstances and being unable to work or get anything done." (Tr. 320). The claimant related that she had been sexually abused by her father, who was an alcoholic, when she was three years old which continued until her parents divorced when she was five. (Tr. 321). The claimant reported that she had been in six abusive relationships and that she "has difficulty controlling her moods." (Tr. 321). During the exam, Dr. Hickman administered several objective tests including, *inter alia*, the Mental Status Exam, Wechsler Adult Intelligence Scales-III, Wechsler Memory Scales-III, and Minnesota Multiphasic Personality Inventory-II. (Tr. 321). The Mental Status Exam revealed that claimant exhibited relevant, coherent, and goal-directed through processes but "demonstrated some blocking to her thought processes and had difficulty describing her internal dialogue." (Tr. 322). The claimant's affect was blunted and her mood was depressed. (Tr. 322). She reported heavily drinking between 2001 and 2007 and previous methamphetamine use, but stated that she had to give up the meth and cut down on alcohol because of her husband's health problems and their money problems. (Tr. 322). The results of claimant's WAIS-III indicated that she had a verbal IQ of 70, a performance IQ of 81, and a full scale IQ of 74. (Tr. 322). Finally, he found the results of the MMPI-II revealed that claimant's personality profile included the following, *inter alia*: i) she was experiencing mild to moderate emotional distress characterized by dysphoria, worrying, and anhedonia; ii) she frequently worried about something and feels inadequate, helpless and insecure; iii) she is over-controlled and

fearful of losing control; iv) she has concentration difficulties and memory problems; v) she does not analyze the reasons for her behavior or the behavior of others; vi) her prognosis was poor because she lacks insight into her own behavior and see little chance of significant change.  (Tr. 324).  Dr. Hickman diagnosed the claimant with bipolar disorder, mixed type, untreated; history of alcohol dependence and methamphetamine use; nicotine dependence; developmental language disorder, and borderline to mild mental retardation and assessed her GAF to be 55.  (Tr. 325).  Dr. Hickman also completed a Mental Residual Functional Capacity Assessment and found that claimant was markedly limited in the following areas: i) ability to understand and remember detailed instructions; ii) ability to carry out detailed instructions; iii) ability to sustain an ordinary routine without special supervision; iv) ability to accept instructions and respond appropriately to criticism from supervisors; and v) ability to respond appropriately to change in the work setting.  (Tr. 327-28).  Finally, Dr. Hickman opined that claimant was unable to manage her own benefits and had met the Listing criteria for 12.05C.  (Tr. 326).

Regarding Dr. Hickman's assessment of the claimant's functional mental imitations, the ALJ found as follows:

> As for the opinion evidence, Dr. Hickman, opined the claimant meets the criteria of listing 12.05(C).  However, the Administrative Law Judge disagrees with Dr. Hickman's opinion in reference to this, as he finds that she meets this listing only with the presence of alcohol abuse, as alcohol is a known depressant.  Dr. Hickman opined the claimant has untreated depression, however, it appears that by drinking, the claimant is inducing her depression, thus causing her lowered IQ testing.  .  .  .  The Administrative Law judge further finds that that (sic) without the use of

alcohol and cigarettes, the claimant could afford needed medication and therefore, reduce her depression.

(Tr. 18). This analysis is flawed, however, because the ALJ rejected Dr. Hickman's opinions (which were garnered after the administration of a battery of psychological tests) based on his own speculative lay opinion that claimant's drinking is "inducing her depression" and lowering her IQ testing. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.")[quotation omitted] [emphasis in original]. Dr. Hickman makes no mention in his report that any of the results gained from the battery of tests performed during his examination *or* his opinions regarding the claimant's mental health limitations were affected *in any way* by the claimant's alcohol use. If the ALJ thought that there was a possibility that Dr. Hickman's opinions were somehow connected to the claimant's alcohol use, he should have at a minimum recontacted Dr. Hickman to resolve those issues. *Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) ("[T]he ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled. . . . [W]hen the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect

to that issue."), *citing* 20 C.F.R. § 404.1512(e) and *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005).

The Commissioner argues that findings by Dr. Cooper (based on an examination in 1997) support the ALJ's conclusion that the claimant's "mental functioning was significantly greater than what Dr. Hickman found, factoring in Plaintiff's alcohol dependence."  But the ALJ *never mentioned* Dr. Cooper's report, let alone cited it as a basis for his findings regarding the effect of claimant's alcohol use on the severity of her mental impairments.  Therefore, this argument is merely a *post hoc* rationalization, which the Court declines to adopt.  *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Because the ALJ failed to properly analyze the opinion of state examining physician Dr. Hickman, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The decision of the Commissioner is accordingly REVERSED, and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma